JOYCE R. BRANDA
Acting Assistant Attorney General
PAUL J. FISHMAN
United States Attorney
IRENE E. DOWDY
Assistant United States Attorney
*/s/ Michael A. DiLauro*
MICHAEL A. DiLAURO
Trial Attorney
Torts Branch, Civil Division
U.S. Department of Justice
1425 New York Ave., N.W., Ste. 10146
Washington, D.C. 20005
Telephone: (202) 616-4047
Facsimile:  (202) 616-4002
michael.dilauro@usdoj.gov

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 1:14-cv-07336-JEI-JS |
| ) | |
| DENAK DEPOCULUK VE ) | |
| NAKLIYECILIK A.S., *in personam;* ) | |
| ) | |
| Defendant. ) | |

UNITED STATES' AMENDED VERIFIED ADMIRALTY COMPLAINT

Nature of Action

1.      This is a case of admiralty and maritime jurisdiction, as will more fully appear, and it is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.  *See also* 28 U.S.C. § 1333(1) (giving district courts original jurisdiction of admiralty or maritime cases).

Parties and Property Subject to Attachment

2.      Plaintiff, the United States of America, is a sovereign nation authorized to bring suit on its own behalf and that of its administrative agencies.  *See* 28 U.S.C. § 1345 (United States as Plaintiff).  Relevant here, the United States Army Corps of Engineers owns and operates the Caven Point Marine Terminal, which was damaged on December 28, 2011, when a large sea-going bulk carrier, the M/V FEYZA, struck it.

3.      The M/V FEYZA was owned and operated by DENAK DEPOCULUK VE NAKLIYECILIK A.S. ("DENAK").  Defendant, DENAK, is and was a corporation organized and existing under the laws of the Republic of Turkey, with an office and place of business in Istanbul, Turkey.

4.      DENAK has no known presence in the United States.  Accordingly, the United States asked that the Court authorize attachment and garnishment of another ship owned by DENAK, the M/V DENAK TRADER.

5.      On November 25, 2014, the government filed the United States' Verified Admiralty Complaint Seeking Maritime Attachment and Garnishment of the M/V DENAK TRADER.  Doc. 1.  The United States also filed a Motion for Order Approving Maritime Attachment and Garnishment.  Doc. 3.  The Court granted the United States' motion and issued an Order Effecting Maritime Attachment and Garnishment.  Doc. 4.

Letter of Undertaking

6.      DENAK is a member of the United Kingdom Mutual Steam Ship Assurance Association (Europe) Limited ("Association").

7.      The United States contacted the Association to advise of the potential

attachment of the M/V DENAK TRADER.

8. The Association confirmed that both the M/V FEYZA and the M/V DENAK TRADER were owned by the same entity.

9. In lieu of garnishment and attachment of the M/V DENAK TRADER, the Association posted a Letter of Undertaking on behalf of DENAK and the M/V DENAK TRADER on December 1, 2014, wherein it agreed as follows:

> In consideration of United States of America ("U.S.") refraining from arresting or attaching the M/V FEYZA and refraining from attaching, arresting or otherwise restraining or proceeding against any asset under the same ownership, associated ownership, control and/or management as the M/V FEYZA, including the M/V DENAK TRADER, for damages alleged to have been sustained as a result of the allison between the M/V FEYZA and the Caven Point Marine Terminal pier on December 28, 2011, the undersigned Association hereby agrees:
>
> 1) To file or cause to be filed upon your demand an in rem appearance on behalf of the M/V FEYZA and an in personam appearance on behalf of the vessel's owner, Denak Depoculuk ve Nakliyecilik A.S. in any suit instituted in the United States District Court for the District of New Jersey (Camden Division), and to file or cause to be filed a claim by and on behalf of the owner of the M/V FEYZA in such suit, such in rem appearance and claim of ownership and in personam appearance to be consistent with all rights and defenses available to the ship and its owner, none of which is to be considered waived;
>
> 2) In the event of a final judgment (after appeal, if any) being entered in favor of the U.S. against the M/V FEYZA and/or its owner in the aforementioned proceedings, then the undersigned Association agrees to pay and satisfy up to and not exceeding the sum of US $2,225,000 (TWO MILLION TWO HUNDRED TWENTY FIVE THOUSAND DOLLARS) inclusive of interest and costs, subject to reduction by agreement of the parties or order of the Court, the said final judgment, or any lesser amount settled between the parties without final judgment being entered where the settlement has been made with the prior written approval of the Association;

> 3) Upon demand, to cause to be filed a bond in form and sufficiency of surety satisfactory to you or the Court in the above amount securing your claim against the said vessel in the aforementioned action consistent with paragraph 1 above;
>
> 4) In the event the bond referred to in paragraph 3 above is filed, the undersigned shall have no further obligation under paragraph 2 above;
>
> 5) This letter is written entirely without prejudice as to any rights or defenses which the said vessel or said owner may have, none of which is to be regarded as waived;
>
> It is understood and agreed that the execution of this letter by Kevin D. King shall not be construed as binding upon him or her personally nor binding on the firm of Thomas Miller (Americas) Inc., but is to be binding only upon The United Kingdom Mutual Steam Ship Assurance Association (Europe) Limited.

Exhibit A (Letter of Undertaking).

## Jurisdiction and Venue

10. The Court has jurisdiction over the subject matter and the parties. *See* 28 U.S.C. §§ 1333, 1345 (giving district courts original jurisdiction of all civil actions, suits, or proceedings commenced by the United States) & 1355 (giving district courts original jurisdiction "of any action or proceeding for the recovery or enforcement of any fine, penalty, or forfeiture, pecuniary or otherwise . . . .").

11. Venue is proper in the District of New Jersey because of the M/V DENAK TRADER's presence in the district.[1]

---

[1] Admiralty and maritime claims are not governed by the general venue provisions within the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 82 ("These rules do not extend or limit the jurisdiction of the district courts or the venue of action in those courts. An admiralty or maritime claim under Rule 9(h) is not a civil action for

Description of the Incident

12. On December 28, 2011, the M/V FEYZA was a registered vessel of the Republic of Turkey of 27,798 gross tons, a length of 620 feet, a beam of 106 feet, a depth of 15 feet forward and 20 feet aft.[2]

13. On the day of the accident, the weather was clear and windy. The M/V FEYZA entered New York Harbor with the intention of docking at the Claremont Terminal, which is located in Upper New York Harbor at Jersey City.

14. The U.S. Army Corps of Engineers New York District's Caven Point Marine Terminal is situated near the Claremont Terminal.

---

purposes of 28 U.S.C. §§ 1391-1392."). *See also* Moore's Fed. Practice § 110.44 (3d ed.) ("The claim may be brought in any district in which the court has jurisdiction over the . . . subject matter of the claim.") (citing *Davis v. Hill Eng'g, Inc.*, 549 F.2d 314, 324 (5th Cir. 1977) (finding venue to be proper in a district where property can be attached)).

Were it relevant, however, general venue conditions would be satisfied in the District of New Jersey because a substantial part of events giving rise to this cause of action occurred in this judicial district. *See* 28 U.S.C. § 1391(b) (placing venue in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred).

[2] On information and belief, the M/V FEYZA was later renamed SAFARINI, and was subsequently broken-up on February 17, 2014.



**Figure 1, an aerial photograph, shows the damage site.**

15.     On December 28, 2011, Captain Yalcin Gurbuz was the master of the M/V FEYZA.  When the ship reached the Ambrose, New Jersey, Pilot Station, the M/V FEYZA was joined by two tugs, Tug CHARLES D. McALLISTER and Tug MAURANIA III.  With the tugs' arrival, Sandy Hook Sea Pilot John DeCruz boarded the M/V FEYZA to guide it.  When the M/V FEYZA reached Upper New York Harbor, Docking Pilot Robert Moore, who had also boarded, gave the vessel's crew handling directions.

16.     As the M/V FEYZA maneuvered near the Caven Point Marine Terminal,

6

control of the ship was lost.  The M/V FEYZA's bulbous bow allided with the southeast corner of the Caven Point Marine Terminal.  *See* Exhibit B (U.S. Army Corps' Accident Report).  As shown below, significant damage was done to a concrete bulkhead at the terminal.



**Figure 2 shows the view looking east, toward the damaged bulkhead.**

17.    After the accident, Captain Yalcin Gurbuz submitted a Form CG-2892 to the Coast Guard acknowledging the incident.  *See* Exhibit B (setting forth a narrative description of the accident at Block #44).  Captain Gurbuz described the accident in these words:

7

> Vessel's bow has been collided to the pier of U.S. Army Corps Engineering when turning starboard side on berthing maneuvering to Cleramont Terminal.  Two tug boat were pushing the vessel while turning according to docking pilot orders.  There was strong wind abt. 28 kts.  No any damage on the vessel.  Some damages on the pier.

Exhibit B at 2.

Damages

18. After the accident, at approximately 2:00 p.m., on December 28, 2011, officials from the New York District of the U.S. Army Corps of Engineers traveled to the Caven Point Marine Terminal to examine physical damage from the accident.



**Figure 3 shows the view looking southwest, across the damaged bulkhead, toward the M/V FEYZA in the background, which is docked at the scrap metal yard.**

19. They saw that a concrete slab had cracked and heaved where the bulbous bow of the M/V FEYZA struck it. A concrete cap atop a sheet pile wall was also destroyed. Likewise, five timber piles were damaged or destroyed, and concrete panels above, and likely the below, the water line were damaged or destroyed.

20. The day after the accident, December 29, 2011, a diver from Randive, Inc., of New Jersey, confirmed that there was damage below the water line to a timber piling and three concrete bulkhead sheets. *See* Exhibit C (Diver's Report).

21. The New York District of the United States Army Corps of Engineers solicited bids to repair the damage. The cost of repairs, which could increase should additional damage become apparent, is estimated to be as follows:

| | |
|---|---:|
| Contract obligation: | $1,563,346 |
| Cost of hiring divers: | $95,000 |
| Engineering and design expenditures: | $26,000 |
| Supervision and Administration: | $15,000 |
| Overhead: | $200,000 |
| Total: | $1,899,346 |

22. DENAK is liable to the United States for the cost of repairing damage to Caven Point Marine Terminal caused by the M/V FEYZA, to include pre-judgment interest.

### Count I—Strict Liability Arising Under the Rivers and Harbors Act of 1899 for the Allision of the M/V FEYZA with Caven Point Marine Terminal

23. The United States refers to and incorporates by reference, as though fully set forth herein, each and every foregoing paragraph.

24. DENAK, as owner and operator of the M/V FEYZA, is a "person" within the meaning of the Rivers and Harbors Act, as amended, 33 U.S.C. § 408.

25. Upper New York Harbor, in the vicinity of Caven Point Marine Terminal, is a navigable water of the United States within the meaning of 33 U.S.C. § 408.

26. Caven Point Marine Terminal is a public work built and maintained for the preservation and improvement of the navigable waters of the United States within the meaning of 33 U.S.C. § 408.

27. At all material times, the M/V FEYZA was a vessel "used and employed" within the meaning of 33 U.S.C. § 412.

28. Pursuant to the Rivers and Harbors Act, DENAK is liable to the United States for the aforementioned damage caused by the M/V FEYZA.

Count II—Negligence for the Allision of
M/V FEYZA with Caven Point Marine Terminal

29. The United States refers to and incorporates by reference, as though fully set forth herein, each and every foregoing paragraph of this claim.

30. DENAK had a duty to act as a reasonably prudent owner and operator of the M/V FEYZA, and its crew had a duty to act as reasonably prudent mariners.

31. The incident of December 28, 2011, and the resulting damages, were caused by fault, negligence, want of care, on the part of the crew, operator, or owner of the M/V FEYZA.

32. The December 28, 2011 allision was in no way the fault of the United States.

WHEREFORE, the United States prays:

1.    That judgment be entered in favor of the United States against DENAK in an amount of at least $1,899,346, or a lesser or greater sum as may later be proven, plus interest and costs;

2.    That, in accordance with the Letter of Undertaking, the Court direct the Association to pay and satisfy the judgment up to and not exceeding the sum of $2,225,000 (TWO MILLION TWO HUNDRED TWENTY FIVE THOUSAND DOLLARS) inclusive of interest and costs.

3.    That the United States be awarded further relief as the Court may deem just and proper.

DATED:	December 9, 2014

                                      Respectfully submitted,

                                      JOYCE R. BRANDA
                                      Acting Assistant Attorney General

                                      PAUL J. FISHMAN
                                      United States Attorney

                                      IRENE E. DOWDY
                                      Assistant United States Attorney

                                      */s/ Michael A. DiLauro*
                                      MICHAEL A. DiLAURO
                                      Trial Attorney
                                      Aviation & Admiralty Litigation
                                      Torts Branch, Civil Division
                                      U.S. Department of Justice
                                      (overnight courier)
                                      1425 New York Ave., N.W., Ste. 10146
                                      Washington, D.C. 20005
                                      (mailing)
                                      P.O. Box 14271
                                      Washington, D.C. 20044-4271
                                      Telephone: (202) 616-4047
                                      Facsimile:   (202) 616-4002
                                      michael.dilauro@usdoj.gov

## VERIFICATION

Michael A. DiLauro, hereby declares that:

I am an attorney with the Aviation & Admiralty Office, Torts Branch, Civil Division, U.S. Department of Justice, and one of the attorneys for Plaintiff United States of America, and make this verification by authority of Plaintiff and on its behalf. I have reviewed the foregoing Complaint, know the contents thereof, and, from information officially furnished to me, believe the same to be true.

I declare under penalty of perjury, in accordance with 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed this 9th day of December, 2014.

*Michael A. DiLauro*
MICHAEL A. DiLAURO
Trial Attorney
U.S. Department of Justice
Torts Branch, Civil Division
